IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 116,641
116,642
116,643

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA EWING,
*Appellant.*

SYLLABUS BY THE COURT

1.

The classification of prior offenses for criminal history purposes involves interpretation of the revised Kansas Sentencing Guidelines Act, K.S.A. 2018 Supp. 21-6801 et seq. Statutory interpretation is a question of law subject to unlimited review.

2.

The revised Kansas Sentencing Guidelines Act uses prior out-of-state convictions when calculating an offender's criminal history score. Under the Act, the State classifies an out-of-state conviction as a person or nonperson offense by referring to comparable offenses under the Kansas criminal code. If the code does not have a comparable offense, the out-of-state conviction is classified as a nonperson crime.

3.

A prior out-of-state conviction must have elements identical to or narrower than a Kansas person crime to be scored as a person crime.

1

4.
The State bears the burden to prove an offender's criminal history by a preponderance of the evidence. The district court's finding that the State met that burden must be supported by substantial competent evidence.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 20, 2017. Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed August 2, 2019. Judgment of the Court of Appeals vacating sentences and remanding to the district court is affirmed in part and reversed in part. Sentences vacated and cases remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, and *Kimberly Streit Vogelsberg*, of the same office, were on the briefs for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Joshua Ewing appeals his sentencing court's classification of two Arkansas misdemeanors as person offenses when determining his criminal history score after he pleaded guilty to three counts of felony theft and one count of attempted aggravated burglary. He questions: (1) whether his Arkansas misdemeanor conviction for second-degree false imprisonment has a comparable Kansas person crime; (2) whether he can challenge for the first time on appeal the classification of his Arkansas misdemeanor conviction for third-degree domestic battery when it is not clear which provision he was convicted under; and (3) if that second claim can be raised, whether the Arkansas third-degree domestic battery has a comparable Kansas person crime. We vacate Ewing's sentences in each of the three docketed cases in this appeal and remand each for resentencing with directions to score the second-degree false imprisonment conviction as a nonperson offense and to further consider the Arkansas battery.

2

We hold there is no comparable Kansas person crime to the Arkansas false imprisonment conviction. We further conclude insufficient evidence supports the person-crime classification for the Arkansas battery conviction because the record does not reflect which statutory provision Ewing was convicted under. The district court must conduct further proceedings before classifying that conviction.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Ewing in three cases with felony theft, with an additional aggravated burglary count charged in one of those cases. The State alleged the crimes occurred in 2015 and 2016. Ewing pleaded guilty in all three cases, which resulted in three felony theft convictions and a conviction on a reduced charge of attempted aggravated burglary. The charges in our Docket No. 116,642 stem from acts allegedly occurring after the guilty plea in Docket No. 116,641, but before sentencing. Likewise, the charge in No. 116,643 stems from an act occurring after the guilty pleas in Nos. 116,641 and 116,642, but before sentencing. To resolve all three cases the parties jointly recommended Ewing receive a total 36-month prison sentence.

Each presentence investigation report included two Arkansas misdemeanors that combined with a Kansas misdemeanor for conversion to a person felony. See K.S.A. 2018 Supp. 21-6811(a) (providing every three prior class A and B person misdemeanors are rated as a single person felony for criminal history purposes). These Arkansas offenses were "Battery-3rd Degree-Domestic" under Ark. Code Ann. § 5-13-203 and "False Imprisonment-2nd Degree" under Ark. Code Ann. § 5-11-104. Ewing's counsel did not object to this.

3

The district court followed the plea agreement. In No. 116,641, it sentenced Ewing to 15 months' imprisonment for theft. In No. 116,642, it sentenced him to a combined 36 months' imprisonment for attempted aggravated burglary and theft, to run concurrent with the sentence in No. 116,641. And in No. 116,643 it sentenced him to 15 months' imprisonment for theft, also to run concurrent with the sentence in No. 116,641.

Ewing timely appealed, arguing the district court erred by classifying his Arkansas convictions as person offenses. He asserted these classifications required judicial fact-finding that violated his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013).

A Court of Appeals panel held the Arkansas false imprisonment conviction was properly scored as a person crime. It concluded the Arkansas offense was narrower than the comparable Kansas criminal restraint statute, so there was no error regardless of whether the required comparison was governed by this court's decision in *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003), or the identical-or-narrower test Ewing advocated based on *Descamps*. *State v. Ewing*, No. 116,641, 2017 WL 6506574, at *4. (Kan. App. 2017) (unpublished opinion).

But the panel vacated the sentences in each case and remanded for resentencing because the record was unclear what statute or subsection the Arkansas battery offense arose under. The panel concluded there might not be a comparable Kansas person crime depending on what version of the Arkansas offense Ewing committed. It directed the district court to "examine appropriate documents related to the conviction to determine which of the statute's alternative elements formed the basis of Ewing's prior conviction." 2017 WL 6506574, at *7.

4

The panel rejected the State's procedural argument that it should just presume the crimes were properly classified because, in its view, Ewing did not lodge an objection and failed to designate a record sufficient to identify the Arkansas offense in question. The panel reasoned that Kansas caselaw "has made it clear that criminal history challenges can be raised for the first time on appeal even without an objection by the defendant at sentencing." 2017 WL 6506574, at *7 (citing *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 [2015]).

Both sides timely sought review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ARKANSAS FALSE IMPRISONMENT IS NOT A PERSON CRIME

Ewing contends the Arkansas false imprisonment conviction should not be scored as a person crime. The classification of prior offenses for criminal history purposes involves interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. Statutory interpretation is a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Under the revised KSGA,

"(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

"(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction:

5

. . . .

"(3) The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime." K.S.A. 2018 Supp. 21-6811(e).

When the district court pronounced Ewing's sentences, Kansas caselaw construed the statute's predecessor, K.S.A. 21-4711(e), to mean that the offenses need only be comparable—not identical—when determining criminal history. "[T]he comparable offense" was "the closest approximation of Kansas statutes to" the out-of-state crime. *Vandervort*, 276 Kan. at 179.

But in *Wetrich*, this court announced a different statutory interpretation while Ewing's appeal was pending. The State argues *Wetrich* should not apply. We have rejected a similar argument. See, e.g., *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 (2019) (*Murdock II*) ("[A] party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced."); *State v. Keel*, 302 Kan. 560, 562, 357 P.3d 251 (2015) (reaching merits of defendant's challenge to *State v. Murdock*, 299 Kan. 312, 319, 323 P.3d 846 [2014] [*Murdock I*], when defendant "filed a motion with [the Supreme] [C]ourt to correct an illegal sentence" after review was granted in his direct appeal).

The State is also wrong when it claims K.S.A. 2018 Supp. 22-3504(3) bars *Wetrich*'s application to Ewing's direct appeal. Under that statute, "[a] sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is

6

pronounced." *Murdock II* distinguishes sentencing arguments raised on direct appeal from "illegal sentence" claims under K.S.A. 22-3504. *Murdock II*, 309 Kan. at 591-92.

We further reject the State's contention that Ewing's reliance on *Wetrich* is a new issue. Ewing argued from this appeal's outset that his Arkansas offenses were improperly scored as person crimes and advocated for an "identical (or narrower) elements test" for the comparison required by statute. He even argued the test should be adopted on statutory grounds—an approach *Wetrich* adopted.

In *Wetrich*, the court held,

"For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

In *Wetrich*, the Missouri burglary statute defined the structure involved to include "non-dwelling places." 307 Kan. at 563. This was broader than the Kansas burglary-of-a-dwelling statute, under which the structure must be a dwelling. 307 Kan. at 563-64. And the Missouri statute required a specific intent to "commit any crime," which was broader than the Kansas statute's "intent to commit a felony, theft, or sexual battery therein." 307 Kan. at 563. Similarly, in *State v. Buell*, 307 Kan. 604, 608, 412 P.3d 1004 (2018), the Kansas burglary-of-a-dwelling offense was held not comparable to a Florida burglary because it could be committed "'with the intent to commit an offense therein,'" as opposed to Kansas' required intent to commit a felony. And in *State v. Moore*, 307 Kan. 599, 603, 412 P.3d 965 (2018), the court held the mental state element for Oregon burglary—"'*intent to commit a crime*'" in a dwelling—was fatally broader than the Kansas element.

7

In Ewing's case, the first question is whether Arkansas' false imprisonment has a comparable Kansas person crime. In Arkansas, "[a] person commits the offense of false imprisonment in the second degree if, without consent and without lawful authority, the person knowingly restrains another person so as to interfere substantially with the other person's liberty." Ark. Code Ann. § 5-11-104(a).

The panel held the Kansas criminal restraint statute—a person crime—was comparable. *Ewing*, 2017 WL 6506574, at *4. In Kansas,

"(a) Criminal restraint is knowingly and without legal authority restraining another person so as to interfere substantially with such person's liberty.

"(b) Criminal restraint is a class A person misdemeanor.

"(c) This section shall not apply to acts done in the performance of duty by any law enforcement officer of the state of Kansas or any political subdivision thereof.

"(d) Any merchant, or a merchant's agent or employee, who has probable cause to believe that a person has actual possession of and has wrongfully taken, or is about to wrongfully take merchandise from a mercantile establishment, may detain such person on the premises or in the immediate vicinity thereof, in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Such reasonable detention shall not constitute an arrest nor criminal restraint." K.S.A. 2018 Supp. 21-5411.

The panel correctly noted the Arkansas offense's core elements cover a narrower range of conduct than the Kansas offense because Arkansas imposes an additional requirement that the confinement be nonconsensual.

8

Ewing contends the panel erred by looking outside the Arkansas statute to determine whether it had exceptions to liability coextensive with those in the Kansas statute's subsections (c) and (d). But the panel's approach is consistent with how *Wetrich* analyzed the statutory definitions of "dwelling" as used in the Kansas statute and "inhabitable structure" from the Missouri statute. Those definitions had to be found outside the statutes reciting the crimes' elements being compared. See *Wetrich*, 307 Kan. at 563 (analyzing K.S.A. 21-3715 [prohibiting burglary] and K.S.A. 21-3110 [statute defining "dwelling"], and comparing them to Mo. Rev. Stat. § 569.170 [prohibiting second-degree burglary] and Mo. Rev. Stat. § 569.010 [statute defining "inhabitable structure"]).

And with respect to an exception from criminal liability, such as the one we must consider in Ewing's appeal, the exception in the out-of-state jurisdiction should be identical to or *broader* than the Kansas statute to satisfy our state's identical or narrower test. So turning to the Arkansas statutes, the exception for law enforcement officers satisfies our comparability requirement. See Ark. Code Ann. § 5-2-603 (providing "[c]onduct that would otherwise constitute an offense is justifiable when it is . . . [p]erformed by a public servant or a person acting at the public servant's direction in a reasonable exercise or performance of the public servant's official power, duty, or function").

But the Arkansas shopkeepers' exception appears narrower than in Kansas because the Arkansas exception provides,

> "(a)(1) The knowing concealment by a person on his or her own person or on the person of another of an unpurchased tangible personal property offered for sale by a store or business establishment gives rise to a presumption that the person took the tangible

9

personal property with the purpose of depriving the owner of the store or business establishment or another person having an interest in the tangible personal property.

(2)(A) A person engaging in conduct giving rise to the presumption under subdivision (a)(1) of this section may be detained in a reasonable manner and for a reasonable length of time by a law enforcement officer, owner of the store or business establishment, or employee or agent of the store or business establishment in order to ensure the recovery of the tangible personal property.

(B) The detention by a law enforcement officer, owner of the store or business establishment, or employee or agent of the store or business establishment does not render the law enforcement officer, owner of the store or business establishment, or employee or agent of the store or business establishment criminally or civilly liable for false arrest, false imprisonment, or unlawful detention.

"(b)(1) If sufficient notice has been posted to advise patrons that an antishoplifting or inventory control device is being utilized, the activation of an antishoplifting or inventory control device as a result of a person's exiting a store or business establishment or a protected area within the store or business establishment constitutes reasonable cause for the detention of the person so exiting by a law enforcement officer, the owner of the store or business establishment, or by an agent or employee of the owner.

(2) Any detention under subdivision (b)(1) of this section shall be made only in a reasonable manner and only for a reasonable period of time sufficient for any inquiry into the circumstances surrounding the activation of the antishoplifting or inventory control device or for the recovery of the tangible personal property offered for sale.

(3) A detention under subdivision (b)(1) of this section by a law enforcement officer, owner of the store or business establishment, or employee or agent of the store or business establishment does not render the law enforcement officer, owner of the store or business establishment, or employee or agent of the

store or business establishment criminally or civilly liable for false arrest, false imprisonment, or unlawful detention.

"(c) A law enforcement officer, owner of the store or business establishment, or employee or agent of the store or business establishment who observed the person engaging in conduct giving rise to the presumption under subdivision (a)(1) of this section shall provide a written statement that serves as probable cause to justify an arrest if a law enforcement officer arrests the person for theft of property, § 5-36-103." Ark. Code Ann. § 5-36-116.

This shows that a person who would not be guilty of criminal restraint in Kansas might be guilty of second-degree false imprisonment in Arkansas. For instance, Kansas only requires probable cause to believe a person will or is about to take property to detain a person, while Arkansas requires actual "knowing concealment" of unpurchased property or the activation of an inventory control device after notice that one is in use. Accordingly, the Kansas crime is not comparable to second-degree false imprisonment in Arkansas because circumstances justifying an act otherwise constituting the Arkansas crime are not identical to or broader than those in Kansas.

The district court and panel erred when concluding the Arkansas offense should be classified as a person crime. It must be classified as a nonperson crime.

INSUFFICIENT EVIDENCE TO CLASSIFY ARKANSAS BATTERY AS PERSON CRIME

The next question is whether the sentencing court properly classified Ewing's third-degree domestic battery conviction from Arkansas as a person offense. There are two sub-issues: (1) whether Ewing's claim must be discarded because he did not designate a record showing prejudice; and, (2) if the claim can proceed, whether any version of the Arkansas offense has comparable Kansas person crimes. Discussing both

11

involves a somewhat cumbersome process in considering the various offenses Ewing may have committed; but the bottom line is that there is insufficient evidence to determine the factual basis for the Arkansas domestic battery conviction. Additional district court fact-finding is warranted.

To explain this, we start with each PSI report that reflects Ewing was convicted of violating Ark. Code Ann. § 5-13-203 and describes the crime as "Battery-3rd Degree-Domestic." Under Section 5-13-203,

> "(a) A person commits battery in the third degree if:
>
> (1) With the purpose of causing physical injury to another person, the person causes physical injury to any person;
>
> (2) The person recklessly causes physical injury to another person;
>
> (3) The person negligently causes physical injury to another person by means of a deadly weapon; or
>
> (4) The person purposely causes stupor, unconsciousness, or physical or mental impairment or injury to another person by administering to the other person, without the other person's consent, any drug or other substance." Ark. Code Ann. § 5-13-203.

A different crime with a title more closely aligned with the PSI reports' descriptions of the prior offense, third-degree domestic battery, is codified at Ark. Code Ann. § 5-26-305(a). It criminalizes identical conduct as Section 5-13-203(a), but substitutes the phrase "a family or household member" for the phrase "another person."

12

Kansas' simple battery statute and more specific domestic battery statute follow the same mold. In Kansas,

"Battery is:

(1) Knowingly or recklessly causing bodily harm to another person; or

(2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2015 Supp. 21-5413(a).

Similarly,

"Domestic battery is:

(1) Knowingly or recklessly causing bodily harm by a family or household member against a family or household member; or

(2) knowingly causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner." K.S.A. 2015 Supp. 21-5414(a).

Ewing concedes the Arkansas battery statutes' subsections (a)(1) and (a)(2) are comparable to Kansas simple battery. But he focuses on subsections (a)(3) and (a)(4), and the Court of Appeals agreed (a)(3) did not have a comparable Kansas person offense, while disagreeing with him about (a)(4). *Ewing*, 2017 WL 6506574, at \*6.

To reach its conclusion, the panel analyzed both subsections of both Arkansas statutes because it viewed the PSI reports as ambiguously describing the prior crime as third-degree domestic battery, while citing only the general third-degree battery statute, rather than the more specific domestic battery in the third degree. It further noted the

13

reports failed to identify the applicable subsection. 2017 WL 6506574, at *5. It concluded that if it were shown Ewing was convicted under either Arkansas statute's subsection (a)(3), "neither of the Kansas statutes allows for the commission of a negligent battery. If Ewing had been convicted in Arkansas of either negligent battery or negligent domestic battery[], then his Arkansas conviction would not be comparable to a Kansas person crime." 2017 WL 6506574, at *6. To support this conclusion, it cited *State v. Rodriguez*, 305 Kan. 1139, Syl. ¶ 5, 390 P.3d 723 (2017) ("An out-of-state misdemeanor that only requires the defendant to act with criminal negligence is not comparable to a Kansas offense that requires the defendant to act recklessly. If an out-of-state misdemeanor is not comparable to a Kansas offense, it must be scored as a nonperson crime in this state.").

But it concluded that if Ewing were convicted under the Arkansas statutes' subsection (a)(4), K.S.A. 2015 Supp. 21-5425 supplied a person-crime counterpart under *Vandervort*'s comparability standard. *Ewing*, 2017 WL 6506574, at *7. The Kansas statute provides:

> "Unlawful administration of a substance is the administration of a substance to another person without consent with the intent to impair such other person's physical or mental ability to appraise or control such person's conduct." K.S.A. 2018 Supp. 21-5425(a).

The panel held the Kansas and Arkansas provisions "are similar in nature and cover the same type of criminal conduct. More specifically, the crimes forbid intentionally or purposely administering a substance to another person without consent in order to cause physical or mental impairment to the other person." *Ewing*, 2017 WL 6506574, at *7.

In the end, the panel vacated Ewing's sentences and remanded the cases to the district court to determine which Arkansas statute and subsection applied, and to score

14

the crime as a person offense so long as Ewing was not convicted of a form of negligent battery. 2017 WL 6506574, at *7.

The State contends it is Ewing's fault there is an unsettled fact question about his prior Arkansas battery conviction, i.e., which statute and subsection his Arkansas conviction falls under. The State argues that ordinarily the party asserting error must designate a record affirmatively showing prejudicial error. See *State v. Nguyen*, 285 Kan. 418, 430, 172 P.3d 1165 (2007) (citing *State v. Goodson*, 281 Kan. 913, 135 P.3d 1116 [2006]). The State insists that because Ewing did not do this, the court should simply presume the trial court acted properly. The panel avoided the State's argument by noting its concession that a claim of illegal sentence can be raised for the first time on appeal. *Ewing*, 2017 WL 6506574, at *2.

But the State's basic premise that Ewing failed to designate a record is flawed. Ewing persuasively counters that the record shows he is entitled to relief because the deficiencies in the record do not concern a fact for which Ewing carried a burden of proof. See *State v. Obregon*, 309 Kan. __, __ P.3d __ (No. 117,422, 2019 WL 2677913 filed June 28, 2019). In *Obregon*, we clarified the appellate review standard for person-crime classifications of "alternative means [out-of-state] crimes, i.e., offenses with multiple distinct sets of elements." 2019 WL 2677913, at *4. We said,

> "Typically we describe the classification issue as a question of law, but it is a bit more nuanced because it is the State's burden to prove by a preponderance of the evidence that the defendant committed a crime for which classification is appropriate. See K.S.A. 2018 Supp. 21-6814; *State v. Hughes*, 290 Kan. 159, 162, 224 P.3d 1149 (2010). And when the crime in question is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification.

15

"On appeal, the district court's finding that the State met its crime classification burden must be supported by substantial competent evidence to withstand scrutiny. 290 Kan. at 162.The presentence investigation summary frequently can satisfy the State's burden absent defendant's objection, but more is required when the summary does not indicate which version of the out-of-state offense the defendant committed. See K.S.A. 2018 Supp. 21-6814(b), (c). And failing additional proof, the person-crime classification is erroneous as a matter of law. See *Wetrich*, 307 Kan. at 562 (elements of out-of-state offense must be identical to, or narrower than, elements of Kansas comparator)." 2019 WL 2677913, at *5.

Under *Obregon*, the sentencing court errs if it classifies a prior out-of-state conviction of an alternative means crime as a person crime when one or more of those alternative means lacks a Kansas person-crime comparator. In Ewing's case, the Court of Appeals' conclusion establishes at least one form of the Arkansas battery offense lacks a comparable Kansas person crime. Accordingly, there was insufficient evidence to support the district court's person-crime classification.

Put another way, based on the known facts, the district court's legal conclusion that Ewing's battery conviction was a person crime cannot be justified. And even though Ewing failed to object, it was the State's burden to prove his criminal history by a preponderance of the evidence. The State simply did not meet its burden under *Obregon*.

We vacate Ewing's sentences and remand for recalculation of his criminal history score and resentencing under *Wetrich*. See *Obregon*, 2019 WL 2677913, at *1, 5 (vacating and remanding for additional fact-finding because there were two alternative means of committing the Florida offense at issue, and it was unclear which provided the basis for conviction). This will permit the State to demonstrate the precise Arkansas battery crime at issue, consistent with Ewing's requested relief.

Finally, we observe that the district court may wish to consider whether it is necessary to resolve the battery issue. Ewing's PSI reports in Nos. 116,641 and 116,643 each include the person and nonperson felony convictions in No. 116,642. And the PSI report in No. 116,643 includes the nonperson felony convictions in Nos. 116,641 and 116,643. In addition, the PSI reports only show three person misdemeanors. From this, it appears based on our review of the record that Ewing's criminal history cannot be less than G because in each case he would have at least one scored nonperson felony conviction. See K.S.A. 2018 Supp. 21-6809 (providing offender with one nonperson felony but no person felonies scored at G; scores A through G turn exclusively on number of person and nonperson felonies).

If misdemeanor conversion to a felony is no longer possible without the Arkansas false imprisonment conviction being scored as a person misdemeanor, the person or nonperson classification of the battery conviction may be moot. See 2018 Supp. K.S.A. 21-6811(a) (providing every three prior convictions for class A and B person misdemeanors to be rated as a person felony). The parties have not briefed this, so we do not express an opinion about it. But the question arises under our result.

Judgment of the Court of Appeals vacating Ewing's sentences and remanding to the district court is affirmed in part and reversed in part. Sentences vacated and case remanded with directions.