NOT DESIGNATED FOR PUBLICATION

No. 123,118

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID AARON KELLY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MARTIN J. ASHER, judge. Opinion filed March 25, 2022. Affirmed in part, sentence vacated in part, and case remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Megan Williams*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HURST, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: A jury convicted David Aaron Kelly of criminal possession of a firearm by a convicted felon, fleeing or attempting to elude a police officer, and transportation of liquor in an open container. Kelly appeals, arguing that his conviction for fleeing or attempting to elude a police officer was not supported by sufficient evidence and violated statutory prohibitions against prosecuting a crime for which the defendant was previously prosecuted by another state. He also contends that his conviction for criminal possession of a firearm by a convicted felon should be reversed because his underlying felony criminal threat conviction may be unconstitutional. This

1

court agrees with Kelly, but only in part, and affirms his conviction for fleeing or attempting to elude a police officer but vacates his sentence for criminal possession of a firearm by a convicted felon. This court remands the case to the district court to determine the constitutionality of Kelly's underlying criminal threat conviction.

FACTUAL AND PROCEDURAL BACKGROUND

All the charges and appeals in this case relate to a single event on July 30, 2018, when Kevin Lis and Paul Giddens went to a home in Leavenworth, Kansas to address a furnace problem. Lis and Giddens were in a white van outside the property when Kelly approached them in a black Jeep. According to Lis, Kelly asked the men to follow him in their van, which Lis did because he "thought [Kelly] needed some help." For his part, Kelly said he saw Lis and Giddens pointing at his house from their van and he approached the men to determine why they were pointing at his house. Kelly claims that after he confronted the men, Lis began following Kelly wholly unprompted. After a short while, Lis stopped following Kelly.

At that point, Kelly turned his vehicle around and began following Lis. Lis then stopped the van to "see what [Kelly] want[ed]." Lis said he got out of the driver's seat and walked to the back of the van, and Kelly pulled up at an angle by the van. Lis said that Kelly was "screaming" at Lis and Giddens and alleged that Kelly stuck his hand outside the Jeep while holding a gun and pulled the trigger. Kelly said he had a black phone in his hand, rather than a gun, and was attempting to take pictures of Lis and the van. After this brief encounter, Kelly left the area. Lis returned to the van and called 911 to report the incident. Officer Bradley Brandon of the Leavenworth Police Department arrived at the scene within a few minutes.

On scene, Officer Brandon ran the tag number of the black Jeep and realized he was familiar with the Jeep and went to Kelly's house to locate the vehicle. Once there,

2

Officer Brandon saw the black Jeep parked with Kelly sitting in the driver's seat. Because Lis had reported Kelly having a gun, Officer Brandon waited for another officer to arrive before approaching Kelly. But before another officer could arrive, Kelly drove off and Officer Brandon began following him but said he did not activate his lights or sirens because he still did not have a backup officer.

After following Kelly for a bit, Officer Ezekiel Stevenson eventually joined Officer Brandon behind the Jeep and both officers activated their patrol cars' lights and sirens. Kelly did not stop. In fact, a car chase ensued through Leavenworth, Kansas over the state line into Missouri, and crossed back into Kansas. The Platte County, Missouri Police Department and Kansas Highway Patrol were notified of the chase and assisted the Leavenworth officers. Kansas Highway Patrol placed spike strips on the road at the state line. After Kelly crossed back into Kansas, highway patrol officers performed a "PIT maneuver" on the Jeep—hitting the rear of the Jeep, rendering it immobile. Officers removed Kelly from the Jeep and placed him in handcuffs.

Officer Ward Richards III of the Leavenworth Police Department searched the Jeep, finding an opened bottle of Hennessy, a 9-millimeter handgun, and a red container holding what appeared to be marijuana in the middle console. Kelly was arrested and charged with aggravated assault, criminal possession of a firearm by a convicted felon, fleeing or attempting to elude a police officer, unlawful possession of a controlled substance, and transportation of liquor in an open container.

At the trial, Kelly stipulated that he had a prior felony which the State used to support his conviction for criminal possession of a firearm by a convicted felon. After a one-day trial held on January 23, 2020, a jury found Kelly guilty of criminal possession of a firearm by a convicted felon, fleeing or attempting to elude a police officer, and transportation of liquor in an open container. The jury acquitted Kelly of aggravated

assault and unlawful possession of a controlled substance. Kelly was sentenced to 18 months of probation with an underlying prison term of 14 months. Kelly appealed.

DISCUSSION

Kelly appeals two of his convictions. Kelly claims there was insufficient evidence to support his conviction for fleeing or attempting to elude a police officer, and that the conviction violates statutory double jeopardy prohibitions. Kelly also contends that this court should reverse his conviction for criminal possession of a firearm by a convicted felon because his underlying felony conviction for criminal threat may be unconstitutional.

I.    *Sufficient evidence supports Kelly's conviction for fleeing or attempting to elude a police officer.*

The jury convicted Kelly of fleeing or attempting to elude a police officer under K.S.A. 2018 Supp. 8-1568(b)(1)(E) and (c)(2), which provide that any driver who willfully fails to bring their vehicle to a stop for law enforcement when given visual or audible signals to stop their vehicle, and who "commits five or more moving violations" shall be guilty of a severity level 9 person felony. Kelly contends that the State failed to prove that he committed five or more moving violations because the State did not address "what a moving violation was and how it was defined." Kelly relies heavily on *State v. Richardson*, 290 Kan. 176, 183, 224 P.3d 553 (2010), where the Kansas Supreme Court reversed a fleeing conviction because the alleged moving violations were not identified or defined for the jury.

When a criminal defendant challenges the sufficiency of evidence, this court reviews the entire record in a light most favorable to the State and determines whether the State presented sufficient evidence upon which a rational fact-finder could have found the

4

defendant guilty beyond a reasonable doubt. Circumstantial evidence and proper logical inference drawn from such evidence can be sufficient to support convictions for even the most serious crimes. In its review, this court shall not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668-69, 414 P.3d 713 (2018). This court will only look to evidence supporting the verdict and will uphold a conviction so long as "the essential elements of the charge are sustained by any competent evidence." *State v. Van Pham*, 234 Kan. 649, 668, 675 P.2d 848 (1984).

Kelly's reliance on *Richardson* is misplaced. In *Richardson* the defendant claimed the jury instructions failed to identify the moving violations the defendant allegedly committed and failed to define those moving violations under the law. As the State here correctly notes, the jury instruction used at Kelly's trial both listed the moving violations being alleged and provided legal definitions of each violation. Specifically, the instruction read:

"The State alleges the defendant committed the following moving violations:

1. Speeding approximately 50 mph in a 30 mph zone (Broadway Street).
2. Failure to come to complete stop prior to turning (Spruce Street).
3. Failure to use turn signal (Spruce Street).
4. Passing in a no passing zone (Spruce Street).
5. Failure to use turn signal (Seventh Street).
6. Failure to use turn signal (Walnut Street).
7. Failure to stop at stop sign (Walnut Street).
8. Speeding approximately 60 mph in a 30 mph zone (Broadway Street).
9. Speeding approximately 50 mph in a 20 mph zone (Broadway Street downtown).
10. Failure to stop at stop signal (Cherokee Street).
11. Failure to stop at stop signal (Shawnee Street).
12. Failure to stop at stop sign (Metropolitan Ave.).
13. Failure to stop at stop signal (Metropolitan and Seventh)."

"The Uniform Act regulating Traffic provides:

1. A person approaching a stop sign shall stop at a clearly marked stop line, or if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway before entering it.
2. That no person shall drive in excess of the posted speed limit.
3. No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual hazards then existing.
4. A personal shall signal continuously for one hundred (100) feet traveled of intention to turn upon a roadway.
5. The driver of any vehicle shall obey the instructions of any official traffic-controlled device.
6. No driver shall drive on the left side of the roadway within such no-passing zone or on the left side of any pavement striping designed to mark such no-passing zone throughout its length."

The State played a dash camera video of the car chase for the jury and submitted it into evidence. This video captures Kelly's vehicle as it is traveling on the roads specified in the jury instruction. Additionally, Officer Stevenson testified about the car chase and identified the moving violations he witnessed. While Kelly claims Officer Stevenson only used the term "moving violation" to describe three of Kelly's traffic infractions, Officer Stevenson labeled over five traffic infractions as "moving violation[s]" in his testimony. Moreover, because the jury instructions provided the jury with the State's alleged moving violations and definitions for each—the jury was capable of logically inferring from Officer Stevenson's testimony and the dash camera video—which traffic infractions met those elements of the charge. Considering this evidence in a light most favorable to the State, including circumstantial evidence and proper logical inferences, it is clear a rational fact-finder could have found beyond a reasonable doubt that Kelly committed five or more moving violations.

Kelly also argues that the State was not permitted to use multiple instances of the same type of moving violation to support his conviction under K.S.A. 2018 Supp. 8-1568(b)(1)(E). See *State v. Castleberry*, 301 Kan. 170, 339 P.3d 795 (2014). But Kelly misstates *Castleberry*. Kelly relies on language from *Castleberry* unrelated to that defendant's charge of fleeing or attempting to elude a police officer—rather, the court was discussing the defendant's right to an unanimity instruction on the obstruction of official duty charge. See *Castleberry*, 301 Kan. at 185-87. Even if Kelly were correct in his assertion that the State cannot use multiple instances of the same type of moving violation to support the charge of fleeing or attempting to elude a police officer—here, the State asserted five unique moving violations against Kelly—speeding, failure to use a turn signal, passing in a no-passing zone, failure to stop at a stop signal, and failure to stop at a stop sign. Reviewing the record in a light most favorable to the State, sufficient evidence exists for a rational fact-finder to determine beyond a reasonable doubt that Kelly committed at least five moving violations.

II. *Kelly's conviction for fleeing or attempting to elude a police officer does not violate K.S.A. 2020 Supp. 21-5110(c).*

Kelly also requests this court reverse his Kansas conviction for fleeing or attempting to elude a police officer because he contends it violates the statutory prohibition against prosecution of a crime for which the defendant was already prosecuted in a different jurisdiction. See K.S.A. 2020 Supp. 21-5110(c). This statutory prohibition is similar to the constitutional prohibition against double jeopardy prosecution. As a preliminary matter, Kelly relies solely on K.S.A. 2020 Supp. 21-5110(c) and not on federal or state constitutional protections against double jeopardy and argues that his Kansas conviction was prohibited because he had already been convicted in Missouri for resisting arrest.

7

This court exercises unlimited review over issues of statutory interpretation. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). Kansas law prohibits the State from prosecuting a defendant if the defendant was "formerly prosecuted" in another state "for the same conduct" as the Kansas prosecution. K.S.A. 2020 Supp. 21-5110(c)(1) provides that

> "[a] prosecution is barred if the defendant was formerly prosecuted in a district court of the United States or in a state court of general jurisdiction of another state . . . for a crime which is within the concurrent jurisdiction of this state, if such former prosecution:
>
> > (1) [r]esulted in either a conviction or an acquittal, and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution . . . ."

K.S.A. 2020 Supp. 21-5110(c) took effect on July 1, 2011. Prior to that, substantially the same statute was codified under K.S.A. 21-3108(3)(a), which read:

> "[a] prosecution is barred if the defendant was formerly prosecuted in a district court of the United States or in a court of general jurisdiction of a sister state . . . for a crime which is within the concurrent jurisdiction of this state, if such former prosecution:
>
> > (a) [r]esulted in either a conviction or an acquittal, and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution . . . ."

The only difference between the former statute in K.S.A. 21-3108(3)(a) and the current language in K.S.A. 2020 Supp. 21-5110(c)(1) is that the previous language barred prosecution when a defendant was formerly prosecuted "in a court of general jurisdiction of a sister state," while the current language bars prosecution when a defendant was formerly prosecuted "in a state court of general jurisdiction

8

of another state." This slight variation in language bears no weight on this present case and both versions of the statute prohibit the same types of prosecution.

The Kansas Supreme Court, in analyzing the substantially similar prior statute under K.S.A. 21-3108(3)(a), explained that the statute requires the offenses in each state to contain the same elements. See *State v. Worth*, 217 Kan. 393, 398, 537 P.2d 191 (1975) (analyzing whether a defendant's prior, out-of-state conviction was for the same conduct as the Kansas prosecution). In *Worth*, the defendant argued that statutory double jeopardy protections prohibited his Kansas prosecution, and the court held that "[w]here one statute describing an offense requires proof of a fact which another statute does not, then the offenses are not the same, and a conviction or acquittal under one does not bar prosecution under the other on the ground of double jeopardy." 217 Kan. at 398.

Kelly's Kansas conviction did not require proof of the same elements as his Missouri conviction, and thus his claim is without legal support. Kelly was convicted in Missouri under Mo. Rev. Stat. § 575.150, which provides:

"1. A person commits the offense of resisting or interfering with arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she:

(1) [r]esists the arrest, stop or detention of such person by using or threatening the use of violence of physical force or by fleeing from such officer . . . .

. . . .

"3. A person is presumed to be fleeing a vehicle stop if he or she continues to operate a motor vehicle after he or she has seen or should have seen clearly visible

9

emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursuing him or her."

The statute underlying Kelly's Kansas conviction for fleeing or attempting to elude a police officer provides that it shall be a level 9 person felony for:

"(b) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle . . . when given visual or audible signal to bring the vehicle to a stop, and who:

. . . .

(E) commits five or more moving violations." K.S.A. 2018 Supp. 8-1568(b)(1)(E).

Kelly argues that the elements supporting his Missouri conviction are "strikingly similar" to those required for the Kansas conviction—and therefore his prosecution for fleeing or attempting to elude a police officer in Kansas should have been barred by K.S.A. 2020 Supp. 21-5110(c). He analogizes this issue to *State v. Henwood*, 243 Kan. 326, 756 P. 2d 1087 (1988), where the Kansas Supreme Court held that venue cannot be used to constitute a "separate element" under the same-elements test of double jeopardy. In that case, the court rejected the State's argument that the sole difference between the defendant's convictions for receiving stolen property in Missouri and theft in Kansas was that the theft conviction required proof the theft occurred "within the State of Kansas." 243 Kan. at 329-30. However—unlike in *Henwood*—Kelly's convictions in Kansas and Missouri each required proof of an element not necessary to prove the other—completely separate from any venue requirements.

Kelly's Kansas conviction required the State to prove that Kelly committed at least five moving violations during his flight from police—an element not required to support his Missouri convictions. See K.S.A. 2018 Supp. 8-1568(b)(1)(E); Mo. Rev. Stat.

§ 575.150. Additionally, Kelly's Missouri conviction required the State to prove that Kelly's failure to stop was "for the purpose of preventing the officer from effecting the arrest, stop or detention," an intent element not required for the Kansas conviction. Mo. Rev. Stat. § 575.150; K.S.A. 2018 Supp. 8-1568(b)(1)(E). Moreover, K.S.A. 2020 Supp. 21-5110(c) requires concurrent jurisdiction exist between the two jurisdictions that brought the charges in question—something notably absent from Kelly's case. See *State v. Russell*, 229 Kan. 124, 622 P.2d 658 (1981) (finding that a defendant convicted of driving under the influence in both Kansas and Missouri could not benefit from the protection of K.S.A. 21-3108(3)(a) because the defendant committed two separate crimes, and neither Kansas nor Missouri would possess concurrent jurisdiction over the crime occurring in the other state). Kelly's conviction for fleeing or attempting to elude a police officer in Kansas is not for "the same conduct" as his conviction for resisting arrest in Missouri, and thus does not violate K.S.A. 2020 Supp. 21-5110(c).

III.     *The record does not demonstrate whether Kelly's underlying criminal threat conviction is constitutional.*

Kelly also contends that his conviction for criminal possession of a firearm by a convicted felon based on his underlying felony criminal threat conviction is illegal. Specifically, he asserts that the record does not identify if his criminal threat conviction was based on the "reckless disregard" form of criminal threat which has been found unconstitutional. See *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019) (holding that the criminal threat statute that permits conviction for "reckless disregard" is unconstitutional). Kelly argues he is entitled to a remand for determination of whether his conviction for criminal threat is unconstitutional, and if so then his conviction for criminal possession of a firearm by a convicted felon should be reversed. This appears to be an issue of first impression for this court. Before addressing the merits of Kelly's argument, this court must address the State's prefatory contention regarding its jurisdiction.

11

1.  *Kelly's stipulation to his prior felony conviction and failure to object below do not preclude his appeal.*

The State first argues that this court lacks jurisdiction to review Kelly's claims because he stipulated to his prior felony conviction and did not raise the issue below. However, as the Kansas Supreme Court has held—a criminal defendant "may seek and obtain the benefit of a change in the law during the pendency of a direct appeal." *State v. Williams*, 311 Kan. 88, 95, 456 P.3d 540 (2020) (quoting *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 [2019]).

As Kelly notes, he only stipulated to his criminal threat conviction in the context of the existence of a felony conviction on his record. Outside the presence of the jury, the district court asked Kelly if he wanted to stipulate that he had a prior felony. After clarifying he was not stipulating to every element of his criminal possession charge, but solely to the fact that he had a prior felony conviction, Kelly told the court "Oh. Yeah, I stipulate to that." The argument Kelly asserts now is essentially one of an error in classifying that felony as valid for use as an underlying felony to support his conviction for criminal possession of a firearm by a convicted felon.

The State asserts that because *Boettger* had been decided at the time of Kelly's trial, he had an obligation to object to the use of his criminal threat conviction at trial or sentencing. While the Kansas Supreme Court decided *Boettger* in October 2019, it stayed the mandate while the State sought certification from the United States Supreme Court, and the mandate was not issued until June 23, 2020. Kelly was sentenced in February 2020, before the mandate in *Boettger* had issued. Therefore, Kelly's current claim that his conviction for criminal threat may be illegal under *Boettger*, was not ripe at the time of his trial or sentencing in this case. However, Kelly is entitled to the benefit of *Boettger* on appeal because he filed this appeal in February 2020, and his direct appeal was pending when the Kansas Supreme Court issued the *Boettger* mandate—and "a party may seek

12

and obtain the benefit of a change in the law during the pendency of a direct appeal." *State v. Broxton*, 311 Kan. 357, 369, 461 P.3d 54 (2020) (quoting *Murdock*, 309 Kan. at 591-92.) Because the mandate had not issued in *Boettger*—and thus the law changed after his sentencing—Kelly was not required to raise this argument at trial or sentencing. This court has jurisdiction to review Kelly's claim based on a change in law while his appeal was pending.

2. *This court cannot determine whether Kelly was convicted of intentional or reckless criminal threat.*

Having determined it has jurisdiction, this court now turns to the merits of Kelly's claim. Kelly asserts that the State relied on his potentially unconstitutional criminal threat conviction to sustain his conviction for criminal possession of a firearm by a convicted felon, and thus his resulting sentence is erroneous. Kelly frames the issue as a claim of an illegal sentence—but concedes that it is not a typical claim for illegal sentence. Rather, Kelly's claim is that while his appeal was pending the law changed making the criminal threat conviction, which the State used to support his conviction for criminal possession of a firearm by a convicted felon, partially unconstitutional. Under Kelly's argument, the criminal threat conviction could not be used to support the present charge of criminal possession of a firearm unless the State proved the criminal threat conviction was constitutional. Although Kelly's logic is sound, the application of *Boettger* under these circumstances appears to be a matter of first impression for this court, and although similar to a claim for illegal sentence, it is more akin to that of an erroneous sentence. See e.g., *Williams*, 311 Kan. at 98-99 (finding the Kansas Supreme Court's decision in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 [2018], issued while the defendant's direct appeal was pending, required a prior out-of-state offense to be reclassified as nonperson); *Broxton*, 311 Kan. at 369-70 (vacating a sentence and remanding for resentencing consistent with a change in law).

A sentence is illegal when: (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) it is ambiguous about the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1); *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019). Kelly claims his sentence is illegal because it does not conform to K.S.A. 2020 Supp. 21-6810(d)(9), which prohibits a district court from including any prior conviction in an offender's criminal history that has been declared unconstitutional. However, as in *Williams* and *Broxton*, Kelly's sentence was legal at the time of sentencing but a change in the law during the pendency of Kelly's appeal requires this court to determine if Kelly's sentence is erroneous.

Kelly was convicted of criminal possession of a firearm by a convicted felon in violation of K.S.A. 2018 Supp. 21-6304(a)(3) which provides that

"(a) Criminal possession of a weapon by a convicted felon is possession of any weapon by a person who:

. . . .

(3) within the preceding 10 years, has been convicted of a:

(A) Felony under K.S.A. 2013 Supp. 21-5402, 21-5403, 21-5404, 21-5405, 21-5408, subsection (b) or (d) of 21-5412, subsection (b) or (d) of 21-5413, subsection (a) of 21-5415, subsection (b) of 21-5420, 21-5503, subsection (b) of 21-5504, subsection (b) of 21-5505, and subsection (b) of 21-5807, and amendments thereto; article 57 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto; K.S.A. 21-3401, 21-3402, 21-3403, 21-3404, 21-3410, 21-3411, 21-3414, 21-3415, 21-3419, 21-3420, 21-3421, 21-3427, 21-3442, 21-3502, 21-3506, 21-3518, 21-3716, 65-4127a, 65-4127b, 65-4159 through 65-4165 or 65-7006, prior to their repeal; or K.S.A. 2013 Supp. 21-5301, 21-5302 or 21-5303, and amendment thereto, of any such felony; or a crime under a law of another jurisdiction which is substantially the same as such felony, has been released from

14

imprisonment for such felony, or was adjudicated as a juvenile offender because of the commission of an act which if done by an adult would constitute the commission of such felony, was not found to have been in possession of a firearm at the time of the commission of the crime, and has not had the conviction of such crime expunged or been pardoned for such crime. The provisions of subsection (j)(2) of K.S.A. 2013 Supp. 21-6615, and amendments thereto, shall not apply to an individual who has had a conviction under this paragraph expunged . . . ."

At sentencing, the State acknowledged that Kelly's prior conviction for felony criminal threat "was used as the underlying charge for the convicted felon in possession of a firearm" in the present case. Additionally, at a pretrial conference, when discussing whether Kelly would stipulate to the existence of a prior felony the court explained to Kelly that "the gun charge that they have filed against you, possession of a firearm by a convicted felon, one of the elements that the State would have to prove during the trial is that you are a convicted felon." The court further explained, "You're stipulating that you have a prior felony conviction," and "[y]ou understand by making that stipulation, you're giving up your right to have the jury decide that issue?" Kelly replied, "Correct." At the time of his trial and sentencing, prior to the mandate issuing in *Boettger*, Kelly's criminal threat conviction was properly used to support his later conviction for criminal possession of a firearm by a convicted felon. See K.S.A. 2018 Supp. 21-6304(a)(3)(A) (including criminal threat convictions under K.S.A. 2018 Supp. 21-5415(a) as one of the felonies supporting and underlying a subsequent charge for criminal possession of a firearm by a convicted felon).

In *Boettger*, the Kansas Supreme Court declared that the reckless disregard criminal threat provision of K.S.A. 2018 Supp. 21-5415(a)(1), the very statute relied upon to support Kelly's conviction for criminal possession of a firearm by a convicted felon, was unconstitutionally overbroad. 310 Kan. at 819. Notably, Kelly was convicted for criminal threat under K.S.A. 2013 Supp. 21-5415(a)(1), which uses the same

15

language as the 2018 version invalidated by *Boettger*. Compare K.S.A. 2018 Supp. 21-5415(a)(1) with K.S.A. 2013 Supp. 21-5415(a)(1). If Kelly's criminal threat conviction is based solely on the unconstitutional reckless disregard provision of the criminal threat statute, its use as an underlying felony supporting the charge for criminal possession of a firearm by a convicted felon is erroneous.

The State contends that the record additions of Kelly's 2013 criminal threat complaint, his plea journal entry, and his journal entry of judgment suffice to show that Kelly's criminal threat conviction was not based on the unconstitutional reckless disregard provision of the criminal threat statute. The Kansas Supreme Court has held that when a defendant is charged under an alternative means theory of criminal threat that asserts both the intentional and the unconstitutional "reckless disregard" provisions of the statute—there must be sufficient basis for the court to discern beyond a reasonable doubt that the defendant acted intentionally. *State v. Johnson*, 310 Kan. 835, 843, 450 P.3d 790 (2019). Kelly's criminal threat complaint shows the State charged him under an alternative means theory of criminal threat—alleging that he "did unlawfully and feloniously communicate a threat to commit violence, *with the intent* to place another in fear . . . *or with reckless disregard of the risk of causing such fear*." (Emphasis added.) Kelly entered a plea of nolo contendere to his criminal threat charge, but the plea journal entry does not specify whether he pled to intentional or reckless disregard criminal threat—or both. Kelly's journal entry of judgment also does not clarify the issue, showing only that he was convicted of "criminal threat."

Based on the record on appeal, Kelly did not admit or stipulate that his conviction for criminal threat was for the intentional, and still constitutional, form of the crime. Additionally, the record on appeal does not demonstrate beyond a reasonable doubt whether Kelly's criminal threat conviction was for an intentional or reckless criminal threat. As a result, it is impossible to know whether Kelly's current conviction for criminal possession of a firearm by a convicted felon was predicated on a prior

16

conviction that was deemed unconstitutional during the pendency of his appeal. See *Boettger*, 301 Kan. at 822. Although Kelly's claim is not one for an illegal sentence, the claimed error is akin to the allegedly improper inclusion of a conviction in a criminal history score because that allegedly improper conviction was used to support a subsequent conviction. When the record on appeal lacks substantial competent evidence to support a district court's inclusion of a prior conviction in a defendant's criminal history score, this court must remand to allow the district court the opportunity to determine the correct criminal history. See *State v. Ewing*, 310 Kan. 348, 359-60, 446 P.3d 463 (2019); *State v. Cardillo*, No. 120,606, 2021 WL 1149145, at *3 (Kan. App. 2021) (unpublished opinion). This court sees no reason for a different result when the claimed error is the inclusion of a potentially unconstitutional conviction in a criminal history that was used to support a subsequent conviction for criminal possession of a firearm by a convicted felon.

This court must vacate Kelly's sentence for criminal possession of a firearm by a convicted felon and remand to the district court to determine whether Kelly's underlying conviction for criminal threat is constitutional—and thus whether it could be used to support his conviction for criminal possession of a firearm by a convicted felon. If the district court cannot find sufficient evidence that Kelly's criminal threat conviction was for intentional criminal threat, then his conviction for criminal possession of a firearm by a convicted felon cannot be sustained.

CONCLUSION

Kelly's challenges to his fleeing or attempting to elude a police officer conviction hold no merit, and that conviction is affirmed. But this court cannot determine whether the underlying felony conviction used to support Kelly's conviction for criminal possession of a firearm by a convicted felon remains constitutional post-*Boettger*. As such, Kelly's sentence for criminal possession of a firearm by a convicted felon is

17

vacated, and this case is remanded to the district court with directions consistent with this opinion.

Affirmed in part, sentence vacated in part, and case remanded with directions.